1998 ND 144

**SUPERPUMPER, INC., Plaintiff
and Appellant,**

v.

**NERLAND OIL, INC., Defendant
and Appellee.**

**Civil No. 970307.**

Supreme Court of North Dakota.

July 22, 1998.

Thomas A. Wentz, Jr., Pringle & Herigstad, PC, Minot, for plaintiff and appellant. Appearance by Brent Olson, 3rd year law student. Michael A. Bosh, on brief.

Jay D. Carlson, Fargo, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Superpumper, Inc., appealed from an Order compelling arbitration issued by the Stutsman County District Court. We conclude this Order is not appealable under either the Uniform Arbitration Act or the Federal Arbitration Act. We, therefore, dismiss this appeal.

I

[¶ 2] Superpumper purchased the Dakota Fuel Stop in Jamestown, North Dakota, from Nerland Oil in 1995. As part of the purchase, Superpumper executed a promissory note in favor of Nerland Oil. The note was secured by a mortgage against the Dakota Fuel Stop. The promissory note, mortgage, and purchase agreement did not contain any clause compelling arbitration.

[¶ 3] The **"OFFER TO PURCHASE,"** however, indicated it was "subject to a supply and freight agreement to be executed by [Superpumper] in a form acceptable to [Nerland Oil]." Superpumper entered into two supply and freight agreements with West Fargo Truck Stop, Inc. (WFTS). WFTS is affiliated with Nerland Oil. Both the supply and freight agreements contained similar clauses compelling binding arbitration:

### *"BINDING ARBITRATION*

The parties hereto specifically agree that any disputes arising under this Agreement shall be submitted to arbitration pursuant to Chapter 32–29.2 of the North Dakota Century Code.

The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

[¶ 4] The supply and freight agreements were part of the financing for the Dakota Fuel Stop sale. Superpumper was given a credit of $206,904.00 on the purchase price for the freight agreement and a credit of $372,428.00 for the exclusive supply agreement. The financing also included Superpumper's assumption of a mortgage in the amount of $650,000.00 at the Stutsman County Bank. In addition, Nerland took a second mortgage from Superpumper on the property in the amount of $350,000.00.

[¶ 5] After Superpumper changed jobbers/suppliers for the Dakota Fuel Stop, a dispute arose between Superpumper and Nerland involving the processing of credit card receivables. Superpumper sued Nerland Oil seeking either to quiet title on the Dakota Fuel Stop property or to require specific performance to satisfy and release the promissory note and mortgage. Superpumper also sought certain credit card receipts that it claimed Nerland Oil failed to remit. In defense, Nerland Oil claimed, in part, that the entire dispute was subject to arbitration in accord with the supply and freight agreements. Nerland Oil also filed a "Counterclaim and Third Party Complaint" against Superpumper and certain third-party defendants, claiming fraudulent misrepresentation and breach of contract.

[¶ 6] Superpumper and the third-party defendants moved to dismiss the Third–Party Complaint. Nerland Oil and WFTS resisted this motion and filed a cross-motion seeking joinder of WFTS as a defendant in the underlying proceeding. The district court granted the motion to dismiss the Third–Party Complaint, denied the motion to join WFTS, and stayed the underlying proceedings pending arbitration of disputes under the Supply and Freight Agreements.

[¶ 7] Superpumper moved for reconsideration of the district court's order staying the underlying proceeding. Nerland Oil resisted Superpumper's motion and asked the district court to compel arbitration for the entire dispute. The court concluded the agreements between Superpumper, Nerland Oil and WFTS were "so intertwined that it only makes sense to place the entire dispute in arbitration." While the court acknowledged that the documents of sale for the Dakota Fuel Stop make no reference to arbitration, the court, nonetheless, recognized that the offer to purchase and the purchaser's settlement statement both make reference to the Supply and Freight Agreements. Noting the offer to purchase was explicitly subject to the Supply and Freight Agreements, the district court ordered Superpumper and Nerland Oil to settle the entire dispute by arbitration.

II

[¶ 8] On appeal, Superpumper argues the district court erred in ordering the parties to submit the entire dispute to arbitration. Because we conclude the district court's order compelling arbitration is not appealable we do not reach that issue.

[¶ 9] The Uniform Arbitration Act (UAA) was adopted by the 1987 North Dakota Legislature and is codified at Chapter 32–29.2, N.D.C.C. *See* 1987 N.D. Sess. Laws ch. 408 (adopting the Uniform Arbitration Act). The UAA was enacted in North Dakota to expand the use of arbitration in future disputes and improve arbitration procedures, generally. *Hearing on S.B. 2100 Before Senate and House Judiciary Comms.*, 50th N.D. Legis. Sess. (Jan 7, 1987; Mar. 11, 1987) (written testimony submitted to both Senate and House Judiciary Committees by Jay E. Buringrud of the North Dakota Commission on Uniform State Laws). This Court, too, has generously encouraged broad arbitrability of disputes. *See, e.g., Allstate Ins. Co. v. Nodak Mut. Ins. Co.*, 540 N.W.2d 614 (N.D. 1995) (holding arbitrator, rather than district court, had jurisdiction to decide statute of limitations issue); *State v. Stremick Const. Co.*, 370 N.W.2d 730 (N.D.1985) (concluding question of whether dispute was arbitrable is for arbitrator and not district court to determine).

[¶ 10] Section 19 of the UAA delineates

when an appeal may be taken.[1] *See* N.D.C.C. § 32–29.2–19 (UAA § 19). Orders compelling arbitration are not listed as appealable under the Uniform Act. *See id.* With no statutory guidance in the UAA, adopting jurisdictions are divided as to whether an order compelling arbitration is appealable.[2] *See* Unif. Arbitration Act, 7 U.L.A. § 19, note 24, pp. 448–449 (1997); *and generally* 6 A.L.R.4th 652 (1981).

[¶ 11] Some · UAA-adopting jurisdictions hold that an order compelling arbitration is appealable as a final order or an appealable interlocutory order. *See, e.g., Dusold v. Porta–John Corp.*, 167 Ariz. 358, 807 P.2d 526, 528 (Ct.App.1990) (holding appellate court could consider whether arbitration clause was applicable despite assertion order compelling arbitration was interlocutory and not appealable); *Atkins v. Rustic Woods Partners*, 171 Ill.App.3d 373, 121 Ill.Dec. 493, 525 N.E.2d 551, 554–555 (2d 1988) (concluding order compelling arbitration is appealable under a rule permitting appeal of interlocutory order granting injunction); *Evansville–Vanderburgh Sch. v. Teachers Ass'n*, 494 N.E.2d 321, 322–323 (Ind.Ct.App.1986) (interpreting UAA as allowing appeal from an order compelling arbitration because order has fully decided issue before the court); *Brennan v. General Acc. Fire and Life Assur.*, 307 Pa.Super. 288, 453 A.2d 356, 357 (1982) (noting order granting petition to enforce agreement to arbitrate under arbitration act is appealable).

[¶ 12] Other jurisdictions hold that orders compelling arbitration are interlocutory and not appealable. *See, e.g., Chem–Ash, Inc. v. Arkansas Power & Light Co.*, 296 Ark. 83, 751 S.W.2d 353, 354 (1988) (holding orders compelling arbitration are not appealable because the policy favoring arbitration would be frustrated); *Bluffs, Inc. v. Wysocki*, 68 N.C.App. 284, 314 S.E.2d 291, 293 (1984) (concluding there is no right of appeal from an order compelling arbitration because order was interlocutory and did not affect a substantial right or work an injury on the appellant); *Clark County v. Empire Elec., Inc.*, 96 Nev. 18, 604 P.2d 352, 353 (1980) (concluding an order compelling arbitration is not appealable under the UAA).

[¶ 13] In the present case, each party recognizes there is a split of authority on the question of whether the UAA allows an appeal from an order compelling arbitration. What the parties have failed to fully realize, and the cases cited above do not for the most part discuss, is the impact of federal law on arbitration clauses.

[¶ 14] The Federal Arbitration Act (FAA) is codified as amended at 9 U.S.C. sections 1 to 16. The FAA preempts state law and governs all written arbitration agreements in contracts involving interstate commerce. *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995) (holding the words "involving commerce" in the FAA signal Congress's intent to exercise its full commerce power). The FAA makes agreements to arbitrate valid, irrevocable, and enforceable in federal and state courts. *Id.,* 115 S.Ct. at 838–839; 9 U.S.C. § 2. "Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson*

---

1. The appeals section of the North Dakota Uniform Arbitration Act reads as follows:

**32–29.2–19. Appeals.**
1. An appeal may be taken to the supreme court from any of the following:
   a. An order denying an application to compel arbitration made under section 32–29.2–02.
   b. An order granting an application to stay arbitration made under subsection 2 of section 32–29.2–02.
   c. An order confirming or denying confirmation of an award.
   d. An order modifying or correcting an award.
   e. An order vacating an award without directing a rehearing.
   f. A judgment or decree entered pursuant to sections 32–29.2–01 through 32–29.2–20.
2. The appeal must be taken in the manner and to the same extent as from orders or judgments in a civil action.

2. A number of other jurisdictions have adopted the Uniform Arbitration Act. Unif. Arbitration Act, 7 U.L.A. 1 (1997) (listing 35 jurisdictions wherein the Act has been adopted). *See also* N.D.C.C. § 1–02–13 (providing for the uniform construction of uniform laws).

*Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991).[3] As a result, generally applicable contract defenses may be applied to invalidate arbitration agreements, but states cannot invalidate arbitration agreements with laws applicable *only* to arbitration provisions. *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

■ [¶ 15] The Uniform Arbitration Act is a law that specifically applies to arbitration clauses. Thus, insofar as the state-enacted UAA impedes the accomplishment and execution of the full purposes and objectives of the FAA, the UAA is preempted by federal law. *Smith Barney, Etc. v. Luckie,* 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308, 1314 (1995). *See* U.S. Const. Art. VI, cl. 2 (providing for the supremacy of federal law); *Allied–Bruce Terminix Cos., Inc.,* 115 S.Ct. at 838 (stating FAA applies in state courts and preempts state law).

■ [¶ 16] The purposes and objectives of the FAA are effected through the substantive provisions of the Act. *Reis v. Peabody Coal Co.,* 935 S.W.2d 625, 630 (Mo.App. E.D. 1996). Accordingly, a state is not obligated to altogether ignore its own procedural requirements in light of the procedural aspects of the FAA, provided the state-enacted procedure does not defeat the rights granted by Congress. *Id. Cf. Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d 790, 803 (Minn.1995) (stating "[t]he FAA preempts any conflicting

state law to the extent the state law requires a judicial forum").

[¶ 17] Regardless of whether the contract in question involves interstate commerce, we are persuaded by the wisdom of the decisions interpreting and applying the procedural requirements of the FAA in deciding whether an order compelling arbitration is appealable under the UAA. *See Dakota Wesleyan Univ. v. HPG Int'l, Inc.,* 1997 SD 30, ¶ 6, 560 N.W.2d 921 (turning to the FAA for guidance in determining state supreme court's own jurisdiction). Section 16 of the Federal Act provides for appeals in certain instances.[4] 9 U.S.C. § 16. This section of the FAA attempts to "promote appeals from orders barring arbitration and limit appeals from orders directing arbitration." *Filanto, S.P.A. v. Chilewich Int'l Corp.,* 984 F.2d 58, 60 (2d Cir.1993). Whether an order is appealable, however, does not rest solely on the myopic question: Was arbitration ordered or not? While the statute provides that "an appeal may not be taken from an interlocutory order ... directing arbitration to proceed[,]" 9 U.S.C. § 16(b)(2), the statute further provides that "[a]n appeal may be taken from ... a final decision with respect to an arbitration...." 9 U.S.C. § 16(a)(3). This statutory contrast grew out of the distinction that federal courts had previously recognized "between so-called 'independent' proceedings and so-called 'embedded' proceedings...." *Filanto,* 984 F.2d at 60.

---

**3.** Prior to the revision of the judicial article of the North Dakota Constitution in 1976, the North Dakota Constitution contained a provision (section 120) specifically prohibiting enforcement of arbitration awards. The removal of that constitutional prohibition is evidence that arbitration is viewed as an acceptable method of dispute resolution. *Scherbenske Excavating, Inc., v. North Dakota State Hwy. Dept.,* 365 N.W.2d 485, 489 n. 5 (N.D.1985).

**4.** Title 9, section 16 of the United States Code provides:

§ 16. Appeals

(a) An appeal may be taken from—
  (1) an order—
    (A) refusing a stay of any action under section 3 of this title,
    (B) denying a petition under section 4 of this title to order arbitration to proceed,
    (C) denying an application under section 206 of this title to compel arbitration,

    (D) confirming or denying confirmation of an award or partial award, or
    (E) modifying, correcting, or vacating an award;
  (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
  (3) a final decision with respect to an arbitration that is subject to this title.
(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
  (1) granting a stay of any action under section 3 of this title;
  (2) directing arbitration to proceed under section 4 of this title;
  (3) compelling arbitration under section 206 of this title; or
  (4) refusing to enjoin an arbitration that is subject to this title.

[¶ 18] "In an independent proceeding, the request to compel arbitration is the sole issue before the district court. In an embedded proceeding, the motion for arbitration is made in the course of a larger, substantive suit." *Napleton v. General Motors Corp.*, 138 F.3d 1209, 1211 (7th Cir.1998). The Eighth Circuit outlined the distinction this way:

> "Independent proceedings have been defined as those in which 'the only issue before the court is the dispute's arbitrability,' *McDermott[ Int'l, Inc. v. Underwriters at Lloyds* ], 981 F.2d [744,] 747 [ (5th Cir. 1993),] while embedded proceedings are, in short, all other proceedings in which the question of arbitration arises. In an embedded proceeding, that is to say, one party or the other seeks 'some relief other than an order requiring or prohibiting arbitration (typically some relief concerning the merits of the allegedly arbitrable dispute).' *Filanto*, 984 F.2d at 60."

*Gammaro v. Thorp Consumer Discount Co.*, 15 F.3d 93, 95 (8th Cir.1994). *See also Filanto*, 984 F.2d at 60 (describing in more detail the difference between an independent and embedded proceeding).

[¶ 19] Procedurally, *Gammaro* provides a useful analogy to the present case. In *Gammaro*, the plaintiff claimed violations of state and federal law and sought to form a plaintiff class. *Gammaro*, 15 F.3d at 95. The defendant responded by moving to compel arbitration. *Id.* The Eighth Circuit concluded "[t]he action before us is a typical example of an embedded proceeding...." *Id.*

[¶ 20] Similarly, in the present case, Superpumper sued Nerland Oil seeking certain property and contract remedies. Nerland Oil responded by claiming, in part, that the dispute was subject to binding arbitration. Eventually, the district court ordered Superpumper and Nerland Oil to settle the entire dispute by arbitration. Like *Gammaro*, the present case is a typical illustration of an embedded proceeding in that the order compelling arbitration was rendered in the course of a larger substantive suit.

[¶ 21] Moreover, while Superpumper and Nerland Oil were ordered to arbitrate, the district court did not dismiss the underlying Complaint. The lack of a dismissal of the underlying complaint is often indicative of an embedded proceeding because it suggests that the order compelling arbitration is not wholly dispositive of the case below.[5] *Filanto*, 984 F.2d at 61 (reasoning the order compelling arbitration is not appealable because the district court declined to dismiss the complaint).

[¶ 22] Superpumper claims this order should be appealable because by ordering arbitration of the entire dispute the district court has effectively rendered a final order. We do not necessarily agree that the district court's order leaves no other pending issues,[6] but even if that were the case, Superpumper's argument is still unavailing because an embedded proceeding is not appealable even when the practical result of the order to arbitrate refers all claims to the arbitrator and terminates the proceedings before the district court. *Napleton*, 138 F.3d at 1212; *Gammaro*, 15 F.3d at 96 (quoting *Humphrey v. Prudential Sec. Inc.*, 4 F.3d 313, 318 (4th Cir.1993), for the proposition that "an embedded proceeding may not give rise to a final decision subject to section 16(a)(3) review, even when all the claims in which the arbitration issue is embedded are resolved").

[¶ 23] The rule we adopt today for our own State procedure, that an order compelling arbitration in an embedded proceeding is not appealable, is consistent with the policy favoring arbitration endorsed by the Congress and this Court's recent precedents. This pro-arbitration policy discourages delays in

---

5. While the lack of a dismissal may indicate an embedded proceeding, the presence of a dismissal does not always indicate that the underlying proceeding is independent. *See Napleton v. General Motors Corp.*, 138 F.3d 1209, 1211 (7th Cir. 1998) (holding it is the nature of the underlying action that determines whether order is appealable in case where district court dismissed action without prejudice "to allow for arbitration"); *Fi-*

*lanto, S.P.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 61 (2d Cir.1993) (concluding a proceeding was embedded even though docket entry marked the case "closed").

6. Once the arbitrator decides this case, district court action may be required to effect certain remedies, *e.g.*, foreclosure.

the onset of arbitration and "requires that, with respect to embedded actions, the party opposing arbitration must bear the initial consequence of an erroneous district court decision requiring arbitration." *Filanto*, 984 F.2d at 61. This issue is reviewable once the arbitration is completed and the district court has rendered a final disposition, but the present order compelling arbitration is an embedded proceeding and is not appealable.

## III

[¶ 24] Accordingly, the appeal is dismissed.

[¶ 25] SANDSTROM, NEUMANN, MARING and THOMAS K. METELMANN, District Judge, concur.

[¶ 26] THOMAS K. METELMANN, District Judge, sitting in place of MESCHKE, J., disqualified.

